[L. A. No. 290. Department Two.—February 24, 1898.]

TENNESSEE A. ANDREWS, Respondent, v. J. P. ANDREWS, Appellant.

DIVORCE—EXTREME CRUELTY—CORROBORATION OF PLAINTIFF—CONSTRUCTION OF CODE.—The main purpose of section 130 of the Civil Code, requiring corroboration of the parties in any action of divorce, is to prevent collusion; and where a divorce is sought on the ground of extreme cruelty, consisting of successive acts of ill-treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff, but it is sufficient corroboration if a considerable number of important and material facts are testified to by other witnesses, or if there is other evidence, circumstantial or

direct, which strongly tends to strengthen and confirm the statements of the plaintiff.

ID.—EXTREME CRUELTY NOT CLOSELY DEFINED—DISCRETION OF TRIAL COURT.—The code does not sharply define or make definite limitations of the phrase "extreme cruelty," but merely describes it in general terms, and leaves a wide range of discretion in a trial court to the judge or jury.

ID.—GRIEVOUS MENTAL SUFFERING—QUESTIONS OF FACT—REVIEW OF FINDINGS.—The infliction of grievous mental suffering, independent of physical injury, may constitute extreme cruelty; and whether, in any particular case, the ill-treatment of the wife by the husband is so unusual as to be beyond that misconduct which may be attributed to the ordinary weaknesses and passions of men, and whether such treatment caused grievous mental suffering to the wife, are largely questions of fact to be determined by the trial court; and its findings thereupon cannot be disturbed upon appeal, unless the evidence in support of them is so slight as to indicate a want of ordinary good judgment and an abuse of discretion by the trial court.

ID.—CONDONATION—RENEWAL OF CRUEL TREATMENT.—The return of the wife to the husband after a course of cruel treatment, which caused her to leave him, does not establish a condonation, where it appears that the husband thereafter renewed his cruel treatment, and was repeatedly guilty of the same offenses which he had formerly committed.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order denying a new trial. W. B. Cope, Judge.

The facts are stated in the opinion of the court.

Wilcoxon & Bouldin, J. M. Wilcoxon, Rodgers & Paterson, and Ernest Graves, for Appellant.

John R. Aitken, for Respondent.

McFARLAND, J.—This is an action brought by a wife against her husband for a divorce, upon the ground of extreme cruelty. Judgment went for plaintiff, and defendant appeals from the judgment and from an order denying his motion for a new trial.

The facts averred as constituting extreme cruelty consist of many alleged cruel acts of appellant extending over a period of several years—such as calling her vile names, as "whore," "liar," "a damned liar," "a damned old whore," "a devil," "the biggest devil that God Almighty ever let live," "an old heifer," and others of a like opprobrious character; falsely charging her with being "crazy" and "demented," and threatening to send her

to an insane asylum; falsely charging her with being sexually intimate with another man; falsely charging her with having tried to poison him; and on one occasion doing physical injury to her person by seizing her and violently shaking her. It is also averred that being a man of great wealth—all of it being community property—he compelled respondent to live in uncomfortable and unwholesome quarters, and to pay household and family expenses out of a small and inadequate allowance. And it is averred that appellant's conduct aforesaid caused respondent "extreme mental anguish"; and, also, that this mental suffering, together with physical pain caused by appellant's said conduct, has injured her health and endangered her life. The findings of the court are, substantially, that all the averments of the complaint above stated are true.

Counsel for appellant have, in their briefs, argued very elaborately and ably that the judgment is wrong and should be reversed. They contend that the evidence does not sustain the findings, and make other points which will be hereafter briefly noticed; but when their arguments are fully analyzed they will be found to rest mainly on the contention that, looking over the whole case, and even taking the facts testified to by respondent and her witnesses and found by the court to be true, there does not appear such a state of fact as constitutes, in law, "extreme cruelty," or warrants a divorce upon that ground.

With respect to the sufficiency of the evidence to justify the findings, it is not denied that respondent herself testified very fully to the truth of the material facts found, but it is contended that she was not sufficiently corroborated to meet the requirements of section 130 of the Civil Code. But, in the first place, where the cruelty consists of successive acts of ill-treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff; it is sufficient corroboration if a considerable number of important and material facts are so testified to by other witnesses, or there is other evidence, circumstantial or direct, which strongly tends to strengthen and confirm the statements of the plaintiff. The main purpose of section 130 is to prevent collusion. (See *Smith v. Smith*, 119 Cal. 183; *Evans v. Evans*, 41 Cal. 103; *Baker v. Baker*, 13 Cal. 88.) In the case at bar there was corroboration

in the direct testimony of several witnesses of nearly all the testimony given by respondent—certainly of the abusive and vile language used by appellant, of the charge of trying to poison, of the charge of adultery, and of the charge of insanity. There was, no doubt, some conflicting evidence on these points; but the testimony of appellant's own witnesses, which was largely of a negative character, was also to a considerable extent corroborative of some of respondent's statements. Indeed, about the only part of her testimony of any gravity of which there was no express corroboration was that concerning the occasion when she says he assaulted her physically, and as to that it can hardly be said that the whole body of the evidence did not to some extent strengthen and confirm it; but a determination of the correctness of the finding on that subject is not necessary, for the other findings amply support the judgment. The corroboration in the case at bar was certainly as great as in the cases of *Venzke v. Venzke*, 94 Cal. 225, and *Cooper v. Cooper*, 88 Cal. 45, where it was held sufficient. (See, also, *Evans v. Evans, supra,* and *Wolff v. Wolff*, 102 Cal. 433.)

The general contention that the evidence and the facts found do not constitute, in law, extreme cruelty, within the meaning of the code, cannot be maintained. There is no attempt in the code to sharply define or to make definite limitations of the phrase "extreme cruelty." It is merely described in general terms to be "the infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage." This leaves a wide range of discretion in a trial court to the judge or jury. It is now established law that the infliction of grievous mental suffering, independent of physical injury, may constitute extreme cruelty. (*Barnes v. Barnes*, 95 Cal. 171; *Smith v. Smith, supra; Fleming v. Fleming*, 95 Cal. 430; 29 Am. St. Rep. 124; *Venzke v. Venzke*, 94 Cal. 225.) Whether in any particular case the ill-treatment of the wife by the husband is so unusual as to be beyond that misconduct which may be attributed to the ordinary weaknesses and passions of men, and whether such treatment caused grievous mental suffering to the wife, are largely questions of fact to be determined by the trial court. Its findings on such questions cannot be disturbed on appeal unless the evidence in support of the findings be so slight as

to indicate a want of ordinary good judgment and an abuse of
discretion by the trial court (*Fleming v. Fleming, supra; Barnes
v. Barnes, supra*); and the evidence in the case at bar was not
of that character.  It is no doubt to be deplored, as counsel
for appellant say, that a husband and wife who have lived to-
gether as long as the parties here have, and raised so large a
family of children, should in their declining years be divorced;
but that consideration is not sufficient to overturn the judg-
ment.  It is also contended that the abusive language used by ap-
pellant to respondent was the result of temporary fits of anger,
and was not intended to have its apparent meaning, and that
his repeated statements of her insanity were made merely with
the kindly purpose of making certain excuses for her; but the
court below, with all the witnesses and the whole case before
it, found otherwise.  As to the charges of the attempt to poison
and want of chastity no plausible explanation is offered.  The
court found that the abusive language hereinbefore stated was
frequently used, and the said charges were frequently made, in
the presence of the grown-up children of the parties, and of
others.    Counsel contend that there is no evidence to war-
rant the findings that certain parts of the language and charges
were used and made in the presence "of others" than the chil-
dren; but, in the first place, it was not necessary that all (if any)
of these things should have occurred in the presence of others
than the children; and, in the second place, a close inspection
of the language of the findings shows that they do not purport
to find that the occurrences took place in the presence "of others"
except in the instances where there was evidence to support
the finding.  The findings amply support the charge of extreme
cruelty, and there was certainly sufficient evidence to support
all the material and necessary findings.

The contention that there was a condonation by respondent
which should defeat the action cannot be successfully maintained.
She left the appellant in November, 1893—the time when she
said he offered her physical violence; but through the inter-
vention of mutual friends she was induced to return in a few
days afterward.  The court finds that after a few months he
renewed his former cruel treatment, and was repeatedly guilty
of the same offenses which he had formerly committed as above

stated; and there was sufficient evidence to support these findings. There was, therefore, no condonation. "Condonation implies a condition subsequent; that the forgiving party must be treated with conjugal kindness." (Civ. Code, sec. 117.) "Condonation is revoked and the original course of divorce revived: 1. When the condonee commits acts constituting a like or other cause of divorce; or 2. When the condonee is guilty of great conjugal unkindness, not amounting to a cause of divorce, but sufficiently habitual and gross to show that the conditions of condonation had not been accepted in good faith, or not fulfilled." (Civ. Code, sec. 121.)

There are no other points in the case necessary to be specially mentioned.

The judgment and order appealed from are affirmed.

Temple, J., and Henshaw, J., concurred.

Hearing in Bank denied.