[L. A. No. 7109. In Bank.—May 25, 1922.]

## JAMES FULTON PERCY, Respondent, v. JOSEPHINE LEVINA PERCY, Appellant.

[1] DIVORCE—APPEAL — FINDINGS — CONFLICT OF EVIDENCE.—The rule that appellate courts are powerless to interfere with the findings of fact where the evidence is conflicting applies to divorce cases as well as to any other, with the single exception that before a divorce can be granted the testimony of the plaintiff must be corroborated.

[2] ID.—EVIDENCE—CORROBORATION.—In an action for divorce, corroboration of every act sworn to by the plaintiff is not required, but evidence, circumstantial or direct, substantially tending to confirm the plaintiff's testimony upon a considerable number of material facts, is sufficient.

[3] ID.—RESIDENCE — SUFFICIENCY OF CORROBORATION.—In this action for divorce, the testimony of the plaintiff as to his residence in the county of suit is sufficiently corroborated.

[4] ID.—PRESENCE ON MILITARY DUTY—EFFECT OF.—The plaintiff in an action for divorce is not precluded from establishing his residence in the county in which the action is brought by reason of the fact that at the time in question he is on military duty in an army camp in such county.

[5] ID.—DIVISION OF COMMUNITY PROPERTY — PLEADINGS — COLLOQUY OF COURT AND COUNSEL—ERRONEOUS AWARD.—Where in an action

---

4. Character of residence essential to giving jurisdiction in divorce proceedings, notes, Ann. Cas. 1915C, 788; 12 L. R. A. (N. S.) 1100; 28 L. R. A. (N. S.) 992; L. R. A. 1915D, 852.

for divorce the issue of the division of the community property was not contained in the pleadings, but evidence in regard thereto was introduced as incidental to the question of costs, and the value of such property was discussed in a colloquy between court and counsel at the close of the trial in connection with the allowance of the wife's costs, such evidence and discussion did not justfy the court in awarding to the husband the balance of the community property after payment of the wife's costs.

[6] ID.—COMMUNITY PROPERTY—LITIGATION IN SUBSEQUENT ACTION.—Parties are entitled to litigate their marital status without reference to their community property and to leave their rights in such property to be determined by a subsequent action, in which the court, where a decree is awarded on the ground of cruelty, may exercise its discretion as to a proper division thereof.

APPEAL from an interlocutory decree of divorce of the Superior Court of San Diego County. C. N. Andrews, Judge. Modified.

The facts are stated in the opinion of the court.

Lucien Gray for Appellant.

Gordon Gray, Dwight D. Bell and Hunsaker, Britt & Cosgrove for Respondent.

WILBUR, J.—The plaintiff husband was granted an interlocutory decreee of divorce on the ground of extreme cruelty and desertion, and the defendant was awarded one thousand dollars as her share of the community property, payment of which was ordered forthwith. The defendant appeals upon the ground that the evidence is insufficient to justify the findings of the trial court as to residence, cruelty, and desertion, and predicates such contention in part upon the statutory requirement that the evidence of the parties in a divorce action must be corroborated (Civ. Code, sec. 130). It is conceded that the evidence on most of the contested points is contradictory, but it is nevertheless claimed that there is not sufficient corroboration to justify the respective findings attacked.

6. Effect of divorce on community property in the absence of adjudication, note, 11 L. R. A. (N. S.) 103.

[1] Appellate courts are powerless to interfere with the findings of fact where the evidence is conflicting. This rule applies to divorce cases as well as to any other with the single exception that before a divorce can be granted the testimony of the plaintiff must be corroborated (Civ. Code, sec. 130). [2] The rule in this regard is correctly stated in the respondent's brief, as follows: "Corroboration of every act sworn to by the plaintiff is not required. Evidence, circumstantial or direct, substantially tending to confirm the plaintiff's testimony upon a considerable number of material facts, is sufficient." (*Cooper* v. *Cooper,* 88 Cal. 45, 48 [25 Pac. 1062]; *Andrews* v. *Andrews,* 120 Cal. 184 [52 Pac. 298]; *Avery* v. *Avery,* 148 Cal. 239 [82 Pac. 967].) Without a discussion of the evidence or of the findings in detail it is sufficient to say that the record shows ample corroboration of the plaintiff's testimony.

As to the finding of desertion, appellant claims that the plaintiff's testimony concerning her refusal to have reasonable marital intercourse is not corroborated except by her admission, and that therefore the evidence is insufficient to justify a decree upon that ground. In view of our conclusion that the evidence is sufficient to support the finding of the trial court upon the issue of extreme cruelty, it is immaterial whether or not the testimony with reference to desertion is corroborated.

[3] It is claimed that there is not sufficient corroboration to sustain the testimony of the plaintiff as to his residence in the county of San Diego for more than a year before the action was commenced. It is conceded that the plaintiff actually lived within the county of San Diego for more than a year before the commencement of the suit. He testified that he lived there with the intention of making California and, for the time being, the county of San Diego, his permanent residence. He was at that time in the United States army, serving as a physician in the military hospital at Camp Kearny. His actual presence within the county of San Diego for more than a year immediately prior to the bringing of the action was amply corroborated by the testimony of others, and his intention to make California his residence was corroborated by various circumstances indicating his intent to establish his residence in California. Plaintiff's testimony as to his intention to re-

main in California was corroborated by the application to the state medical board for a license to practice; by his investigation concerning his right to practice in California; by his conference with physicians with a view to establishing a partnership here; by his declarations from time to time of his intention to remain in California; by his application to join a secret order which required a residence for six months in California as a condition to initiation; by his registration to vote wherein he took the usual oath that at the next election he would have been one year within the state of California. [4] The fact that at the time in question he was on military duty in an army camp did not preclude him from establishing his residence there if he so desired. (*Stewart* v. *Kyser*, 105 Cal. 459, 464 [39 Pac. 19]; *Budd* v. *Holden*, 28 Cal. 124, 127; *Estate of Gordon*, 142 Cal. 125 [75 Pac. 672].)

[5] Appellant contends that the portion of the decree awarding her one thousand dollars as her proportion of the community property and directing its payment forthwith is premature and beyond the issues, and for that reason the case should be reversed. It is conceded by the respondent that the order directing the immediate payment of the one thousand dollars is premature and therefore erroneous, but that the appellant is not aggrieved by that portion of the order which directs the immediate payment to her of the one thousand dollars. This is undoubtedly true. The serious question in the case is whether or not the rights of the parties as to the community property was submitted to the court for decision. This issue was not raised in the pleadings. It is claimed by the appellant that all the evidence in regard to the community property of the parties was introduced not with a view of ascertaining the character and extent of this property for purposes of division, but merely as incidental to the issue of extreme cruelty which was in part predicated upon the extravagance of the defendant. The appellant therefore claims that she is not bound by the rule which requires that judgments shall be affirmed even though the formal issues are not raised by the pleadings where the parties in fact litigated the question in the lower court and the judgment determined the actual questions litigated.

Immediately upon the court orally announcing its conclusion that the plaintiff was entitled to a divorce upon both grounds stated in the complaint and that the findings would be prepared by the plaintiff in the usual way, the defendant asked the court to take into consideration the question of costs. It was suggested to the court that no preliminary motion had been made by the defendant for costs and that the plaintiff had furnished no money for costs for the defendant. Defendant's attorney thereupon stated: "It seems to me there should be some allowance to cover her costs and expenses at least." The court thereupon discussed the value of the community property as shown by the evidence. This included the value of the plaintiff's office at Galesburg and its equipment and three thousand dollars in Liberty bonds. The court then asked counsel if they wished to be heard further on the question of costs before it was decided. Plaintiff's counsel replied that he did. In the course of the discussion as to the costs counsel agreed that under the law the court had power to award all the community property to the plaintiff where the divorce was granted upon the ground of cruelty. The court then stated that the defendant had made a clean-cut defense which was justified and that he felt that he "might well take into account what she had expended in making that kind of a defense, and deduct it from the community property." Thereupon the following occurred:

"Mr. Lucien Gray: It is before your Honor that the doctor has seventy-six thousand dollars insurance and from his insurance he expects to receive an income when he is sixty-four years of age, besides this other property. I simply call that to the attention of the court. It is only approximate. All the expenses of the defendant have to be met; she made a trip back to take depositions and so forth. If the court wants to take that up now or at any other time we will be glad to take it up and make any suggestions or recommendations about it. I would like to have it all settled, if I could, while we were here, particularly as both Mr. Cosgrove and myself are going back to Los Angeles.

"Mr. Cosgrove: We think the court ought to decide it now.

"The Court: I will tell you, it is a purely arbitrary thing with me. I think she is financially on a safe footing; it, however, does not occur to me when the suggestion is made

that it would not be out of keeping with the situation to indemnify her to some extent against the costs made in the kind of a defense that she has conducted here. I suggest that she be allowed a thousand dollars, and that it be arranged so that it may be paid within the possibilities of the plaintiff.

"Mr. Lucien Gray: Of course a thousand dollars would hardly cover her actual court expenses, her depositions and actual costs in court, to say nothing of her personal expense or counsel fees.

"The Court: Well, it is an endeavor to help out in the court costs, and in the actual expenditures that I had that in mind; I had no idea of what they were, or anything of that kind."

After further discussion as to the expenses of the litigation it was stated:

"Mr. Lucien Gray: I understood him to say he had all his insurance so that at sixty-four years of age he would receive an income.

"The Court: I did when I heard him, but I do not see how he figured it. He would have a very meager income from anything the testimony shows he had in the way of life insurance. I think I will let it go at a thousand dollars and try and arrange it in the matter of the judgment how it should be paid."

This colloquy does not justify the conclusion that the parties submitted to the court an issue which is not contained in the pleadings, namely, the division of the community property. Neither plaintiff nor defendant has alleged the nature nor extent of the community property. The colloquy occurred after the court had announced its decision and is directed wholly to the question of costs which was a matter in the discretion of the trial court (Code Civ. Proc., secs. 1022, 1025). The statement about the division of the property was wholly incidental to the question of costs under discussion. Under section 137 of the Civil Code the court was authorized during the pendency of the action to require the plaintiff to pay for the support of the defendant and her expenses in prosecuting the action. As no such preliminary order had been made and as the court at the time of the rendition of its judgment had a right to require the plaintiff to pay the defendant's costs (Code

Civ. Proc., sec. 1025), it is apparent that the whole matter
referred to by counsel as submitted to the court at that
time for its decision was the matter of costs, and that the
order of the court as announced at the hearing was one for
the payment of these costs to the defendant from the com-
munity property, thus diminishing the total amount of com-
munity property. That portion of the decree which directs
the plaintiff to pay defendant one thousand dollars from
the community property is in accordance with the request
of the parties that the court fix the costs to be paid by the
plaintiff and the manner of its payment, but the judgment,
in so far as it awards to the plaintiff the balance of the
community property, is justified neither by the pleadings
nor by the subsequent conduct of the parties. It was a de-
cision upon an issue not presented to the court, namely, the
division of the community property.

[6] The parties were entitled to litigate their marital
status without reference to their community property and to
leave their rights in the community property to be deter-
mined by a subsequent action in which the court might
exercise its discretion as to a proper division thereof, inas-
much as the divorce was awarded to plaintiff upon the
ground of extreme cruelty. (*Brown* v. *Brown,* 170 Cal. 1
[147 Pac. 1168].) The judgment must be modified.

Under the statute and rules of the court it is necessary
for this court to determine whether or not the appellant
is entitled to her costs (Code Civ. Proc., secs. 1027, 1034)
upon appeal. The bulk of the transcript, containing 846
pages, is taken up with a presentation of the conflicting
evidence with relation to the various acts of cruelty and
residence, and therefore is unnecessarily long.

The trial court is directed to modify its fifth conclusion
of law to read as follows: "That defendant is entitled to
one thousand dollars to be paid to her as costs from the
community property of said parties," and to modify the
last paragraph of the interlocutory decree to read as fol-
lows: "It is further ordered, adjudged and decreed that
plaintiff pay to the defendant the sum of one thousand dol-
lars costs out of the community property of said parties."
It is further ordered that appellant have one-half of her
costs of printing transcript on appeal, the costs of printing

her briefs, not exceeding the statutory allowance of one hundred dollars, and her other costs on appeal.

Sloane, J., Lennon, J., Shurtleff, J., Richards, J., *pro tem.*, Lawlor, J., and Shaw, C. J., concurred.