[Civ. No. 35179. Second Dist., Div. Three. Mar. 26, 1970.]

Estate of REESE H. TAYLOR, Deceased.
UNION BANK, as Co-trustee, etc., Petitioner and Respondent, v.
JAMES MARSHALL TAYLOR et al., Objectors and Appellants.

18

**COUNSEL**

Hahn & Hahn and J. Kenneth Cameron for Objectors and Appellants.

Gibson, Dunn & Crutcher, John T. Pigott and Maryjane M. Angus for Petitioner and Respondent.

**OPINION**

**COBEY, Acting P. J.**—James Marshall Taylor and Margaret Elizabeth Taylor Cave, the beneficiaries of two testamentary trusts created by the will of their father, Reese H. Taylor, deceased, appeal from those portions of an order entered February 24, 1969, allowing the co-trustee of the trusts, Union Bank, additional compensation in the amounts of $6,900 and $6,790, chargeable against their respective trust estates.

This additional compensation represented essentially the difference between compensation at the rate of ¾ of 1 percent of the reasonable value of the trust estates, the claimed customary rate of compensation awarded by the trial court generally, and the ¼ of 1 percent specified in both the will and decree of distribution which had become final several years previously. It was also approximately the same rate of compensation as the court had approved in the settlement of the second account. This settlement had been uncontested and covered 1965.[1]

The bank sought this additional compensation in a separate petition. Its petition was granted over the written objections of the two beneficiaries

---

[1]The bank does not claim that it is entitled to the additional compensation on the basis of res judicata or the law of the case. In the settlement of the first uncontested account covering roughly 1964, the bank was awarded compensation of close to 1 percent of the reasonable value of the trust estates.

that the additional compensation was in excess of that specified in the will as previously and finally interpreted by the probate court and without a proper equitable showing therefor. An evidentiary hearing of the petition and the objections was held on January 22, 1969.

## THE APPEALABILITY OF THE ORDER

The notice of appeal was filed with the clerk of the superior court on June 13, 1969. Under Code of Civil Procedure section 904.1 subdivision (k) an appeal may be taken from an order or decree of that court made appealable by the provisions of the Probate Code. Section 1240 of the Probate Code now provides that an appeal may be taken from, among other things, an order "fixing, directing or allowing payment of a trustee's compensation." ■ But this type of order was made an appealable order by an amendment to the section which took effect on November 10, 1969. (See Stats. 1969, ch. 272.) The bill containing this amendment does not include any language indicating that this amendment was intended to operate retroactively. Under these circumstances the amendment may be given only prospective effect. (See *DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 172-173 [18 Cal.Rptr. 369, 367 P.2d 865].)

However, section 1240 has provided for many years that an order settling an account of a trustee is appealable. Although the order before us was not part of the order settling the third account of the co-trustees for the period covered, roughly 1966 and 1967, the bank's petition for the order under appeal was presented at the same time as the third account and may, we believe, for purposes of appeal be treated as if it had been physically a part thereof which ordinarily it would have been.[2] Furthermore, the compensation at issue was for services rendered by the bank as co-trustee during the period covered by the third account, namely, roughly 1966 and 1967. Finally, the purpose of the aforementioned 1969 amendment to section 1240 appears to have been to make appealable those orders fixing the compensation of trustees that are made at times other than the settlement of an account. This purpose would indicate that orders fixing a trustee's compensation on settlement of an account were already appealable.[3] (See 1968-69 C.A.J. Rep., 45 State Bar J., 688-89.) In the light of the foregoing consid-

---

[2] At oral argument counsel advised this court that the reason for the noninclusion of the bank's compensation as co-trustee in the third annual account was the difference of opinion over it between the bank and its co-trustee, the widow of the testator and the mother of appellants. In the report of the co-trustees accompanying the third annual account, the intent of the bank to file a separate petition for compensation for its services and the widow's waiver of her right to compensation for the period covered by the account are both stated.

[3] Under Probate Code section 1122 a testamentary trustee's compensation is ordinarily fixed on settlement of his account and presumably as a part thereof.

erations it would be preferring form to substance to hold the instant order nonappealable by reason of its form alone. (See Civ. Code, § 3528; cf. *Estate of West,* 162 Cal. 352, 356 [122 P. 953]; *Estate of Bissinger,* 60 Cal.2d 756, ·768-769 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506].) ■ The order fixing the bank's compensation was, in legal effect, part of the settlement of the co-trustees' third account and should be so treated. As such the order was appealable.

### The Propriety of the Compensation

Since November 8, 1967, the compensation of testamentary trustees in this state has been governed by Probate Code section 1122, as rewritten that year. (See Stats. 1967, ch. 661, p. 2031.) This statute since that time has always read in pertinent part as follows: "If the will contains provisions for a trustee's compensation, the trustee shall be entitled to be compensated in accordance therewith. Upon proper showing, the court may . . . allow greater compensation than could be allowed under the provisions of the will (1) where the duties of the trustee are substantially greater than those contemplated by the testator at the time of the signing of the will, or (2) where the compensation in accordance with the provisions in the will would be so unreasonably low that a competent trustee would not undertake to administer the trust, or (3) in other extraordinary circumstances. . . ."

The quoted wording originated in the 1965-66 Report of the State Bar Committee on Administration of Justice. (See 41 State Bar J. 761.) An earlier draft permitting generally the award of compensation greater than that specified in the trust instrument only in extraordinary circumstances had been opposed by the California Bankers Association. (See 1964-65, C.A.J. Rep., 40· State Bar J. 564.) ■ The final wording, which we have quoted, was intended to permit the courts to relieve against major inequities. It, nevertheless, recognized that provisions for fixed compensation are, at least, in the nature of contractual obligations which should not be lightly modified.[4] (See 1965-66 C.A.J. Rep., 41· State Bar J. 761.)

Appellants contend that, as rewritten in 1967, section 1122 is merely a codification of the pre-existing equitable powers of the courts with respect to the compensation of fixed fee trustees as declared in *Estate of Bissinger,*

---

[4]This statutory discretion with respect to increasing the compensation of a trustee beyond that fixed in the trust instrument itself is somewhat broader than the general rule set forth in 1959 in section 242, comment f of the Restatement Second of Trusts. Under this rule· a trustee is ordinarily entitled only to the compensation provided in the terms of the trust, but if that compensation is so inadequate that no duly qualified person would be willing to act as trustee, the court may authorize a larger compensation since otherwise the purposes of the trust would be defeated or substantially impaired. For discussion of the relevant cases see Limiting Effect Of Provision In Contract, Will, Or Trust Instrument Fixing Trustee's Or Executor's Fees, Annot., 19 A.L.R.3d 520 et seq. (1968).

*supra,* 60 Cal.2d 756, 761-764, 768, 769-770.)[5] A study of the origin of the rewriting of the statute belies this. The fundamental intent of those rewriting the statute was to provide a more liberal basis for additional compensation of a fixed fee trustee than that provided by *Bissinger.* (See *idem* 1965, 40 State Bar J. 564; *idem* 1966, 41 State Bar J. 761-762.)

Appellants further contend that the evidence in support of the order under appeal was insubstantial and did not meet the standards of proof specified by *Bissinger, supra,* at 60 Cal.2d 770-771. We do not believe that these exacting standards necessarily control proceedings under section 1122 as rewritten. ▮ But, on the other hand, we do not accept the bank's argument that since appellants waived findings, we may not inquire into the substantiality of the evidence supporting the order when that evidence is, as here, part of the record on appeal. (See *Childers* v. *Childers,* 74 Cal.App.2d 56, 59-61 [168 P.2d 218], hear. den.; *Baker* v. *Baker,* 98 Cal.App.2d 424, 426 [220 P.2d 576], hear. den.) Nevertheless, we recognize that in this state of the record every intendment is in favor of the order. (See *Bekins Van Lines, Inc.* v. *Johnson,* 21 Cal.2d 135, 137 [130 P.2d 421].)

An examination of the evidence received below shows that the order under appeal rests on the second alternative ground specified in section 1122 since no evidence was apparently offered expressly in support of either of the other two grounds.[6] This ground is that the compensation specified in the will is so unreasonably low that a competent trustee would not undertake to administer the trust. ▮ An experienced trust officer of the bank, who was in charge of the administration of the Taylor trusts, testified that the bank's currently disseminated fee schedule called for a ¾ of 1 percent rate of compensation for full services to trusts of the approximate size of the Taylor trusts; that this rate was competitive and in line with those of other banks in the Los Angeles area; that she had never heard of or seen a fee schedule

---

[5]Appellants have not argued in this case the constitutionality of the application of section 1122 to the Taylor trusts which were created before section 1122 was revised to authorize the increasing of the compensation of a trustee beyond that fixed in the trust instrument. Therefore, we do not pass upon this question.

[6]We do not accept the bank's argument that its additional compensation may be independently justified on the basis of extraordinary services by it during the period of the third account. Such services would be relevant to an award of additional compensation under section 1122 only if they were shown to come under the third catchall ground — "other extraordinary circumstances." The only evidence offered by the bank that would appear relevant to this ground was the circumstance that such a high proportion of the assets of the Taylor trusts were concentrated in Union Oil Company stock that the position and potential of this stock had to be continually and specially reviewed. We note, however, that only seven specific change of investment recommendations were made by the bank as a co-trustee during the two-year period covered by the third account.

of any other bank or trust company in Southern California which proposed publically a fee of ¼ of·1·percent for such full services and that the bank would not then accept a trust specifying a ¼ of 1 percent rate as its compensation·as trustee.[7]·This was the only relevant evidence offered by the bank in support of its petition. Appellants offered no evidence in opposition or rebuttal.

■ In deciding whether the foregoing evidence constitutes substantial evidence of the·existence·of·the second ground specified in section 1122, we must bear in mind that substantial evidence is evidence that reasonably inspires confidence, is of solid value, and is substantial proof of the essentials which the law requires in a particular case. (See *People* v. *Bassett,* 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777].) ■ Here the experienced trust officer's testimony established that the ¾ of 1 percent rate sought by the bank was its applicable going rate of compensation, that this rate generally prevailed among banks in the Los Angeles area, that she did not know of any rate of ¼ of 1 percent (the rate of compensation specified in the will) publically disseminated by any bank or trust company in Southern California and that the bank would not as of the time of the hearing have accepted for administration a trust specifying the aforementioned lower rate of compensation.

This evidence, though of convincing force, did not establish irrefutably that the rate specified in the will of ¼ of 1 percent was so unreasonably low that no competent trustee would then undertake the administration of the Taylor trusts. All that it tended to show was that in all probability no competent *professional* trustee could be obtained in Southern California at this rate of compensation. Of course, it may perhaps be reasonably inferred as well from the evidence alluded to in footnote 6 to this opinion that the Taylor trusts require the services of a professional trustee. Additionally, it must be recalled that the foregoing evidence was completely unopposed and uncontradicted. Finally, in this state of the record in determining the substantiality of the evidence supporting the order, we must resolve all doubts in favor of its substantiality. (See *Price* v. *Price,* 114 Cal.App.2d 176, 179 [249 P.2d 841].) On the foregoing basis we hold that the evidence in support of the order was substantial.

### THE DENIAL OF A CONTINUANCE TO APPELLANTS WAS PROPER

■ After extensive argument by both counsel following the introduction of the foregoing evidence, appellants' counsel moved for a continuance

---

[7]In argument to the court below counsel for the bank stated that the ¾ of 1 percent rate was the rate customarily followed by that court in awarding reasonable compensation to trustees generally. The accuracy of this statement was not challenged by either opposing counsel or the court.

of the hearing so that he might bring in trust officers from two banks to testify that their banks would accept the administration of the Taylor trusts at the rate of compensation specified in the will. Upon objection by the bank's counsel and following argument on the motion by both counsel, the trial court denied the motion and pointed out that the matter had already been continued three times in order to provide appellants with an opportunity to object to the compensation sought by the bank.

Appellants argue that this denial to them of a continuance of the hearing was an abuse of discretion since they had been misled as to the basis for the bank's claim for additional compensation by the bank's failure to mention section 1122 in its petition for such compensation.[8] It is axiomatic that all are presumed to know the law. This axiom applies with particular force to lawyers. We fail to see how appellants' counsel could have been misled as to the importance of the provisions of section 1122 to this matter. At the outset of the hearing he was the first to mention the statute as being relevant, and he thereafter failed to object to the admission of any of the testimony offered by the bank under the statute. Under these circumstances the denial to appellants of an continuance of the hearing was not an abuse of discretion.

The order is affirmed.

Schweitzer, J., and Allport, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 21, 1970. Mosk, J., was of the opinion that the petition should be granted.

---

[8]Subsequent to the hearing appellants moved to vacate the order under appeal pursuant to Code of Civil Procedure section 473. This motion was heard and orally denied. However, our examination of the relevant portion of the superior court file in this case (P 457487), which file we have added to the record on appeal pursuant to rule 12(a) of the California Rules of Court, reveals that no order of denial was ever made. We, therefore, view the portion of the record on appeal relating to this hearing as irrelevant.